## John De Armand *v*. John Phillips.

When a party is entitled to rescind a contract, he should act promptly and not sleep on his rights, or take time to speculate on the course of events. If he goes on, with a full knowledge of his rights, recognizing the contract as still in force, and, by his acts and conduct, tacitly gives his assent to its execution in a manner different from the original understanding of the parties, he is not entitled, in equity, to have either the contract rescinded, or any relief inconsistent with what may fairly and reasonably be presumed, from his own acts, to have been assented to by him.

THIS was a bill for specific performance.

The bill states that complainant owned a farm in Bertrand, Berrien county Michigan, in the south half of the southeast fractional quarter, of fractional section eighteen, town eight, south of range eighteen west, containing eighty acres. That, being desirous of adding thereto, for his convenience as a farmer, he, in February, 1839, negotiated with defendant for the purchase of an undivided forty-five acres of an adjoining tract lying south of his farm, in which tract defendant pretended to have an equal interest in fee simple, in common with E. Thomas, *as evidenced* by a certificate from the land office at Kalamazoo, No. 23,737. That the tract is the east half of fractional section numbered nineteen, in town eight, south of range eighteen

De Armand *v.* Phillips.

west, in Berrien county, containing, according to the United States survey, two hundred and five acres, and eighty-five hundredths of an acre.   That the result of the negotiation was a purchase in fee simple, of forty-five acres of the undivided interest of defendant in that tract, for eight hundred dollars, payable in instalments.   That defendant agreed to convey in fee simple, on May 1st, 1839, forty-five acres of his undivided interest, and also that, when partition should be had, complainant should have his forty-five acres set off, in fee simple, adjoining his farm, at the cost and expense of defendant.   That, on February 11th, 1839, complainant and defendant went to J. G. Ames, a justice of the peace, to have the agreement reduced to writing. They stated the terms of it to Ames, who drew up articles of agreement which were then executed, and delivered to Benjamin Redding for safe keeping.   The bill sets out the substance of the agreement, and that complainant was to have his forty-five acres set off next to his farm, *if the arbitrators should so award.*

That, by a mistake of Ames, the written agreement does not conform to or agree with the instructions given him, in that it does not describe, fitly and accurately, the tract of land in which complainant purchased an interest which he avers was forty-five acres of defendant's equal undivided interest in and to the *east half* of fractional section nineteen, instead of the *southeast quarter* of said section. Nor does it conform to the instructions in properly expressing the agreement that, in the partition, complainant should have set off in fee simple, at the expense of Phillips, forty-five acres from the north side of the tract adjoining complainant's farm on the south.   That, to obtain partition at law prior to the time designated by the agreement, Phillips consented to execute a deed, and, on February 27th, 1839, he did execute, with his wife, a deed of bar-

gain and sale of forty-five acres of his undivided interest in the east half of fractional section nineteen, town eight south, of range eighteen west, being the same premises mentioned, or *intended*, in the articles of agreement. The bill sets out the covenants in the deed, and avers that complainant has paid all the purchase money but $250 embraced in a note, on which suit had been brought, and was at issue. That complainant, since the making of the deed, has discovered that when the deed was made, defendant did not make a good title. That the title is still in the United States; that no valid certificate or patent, or other evidence of title, has ever issued from the United States to defendant, or any one else, for said premises or any part thereof; that certificate No. 23,737 is invalid, erroneously issued, and declared to be so by the United States. That Thomas is a separate purchaser of one hundred and sixty acres of said east half of fractional section nineteen, lying in the form of a regularly surveyed quarter section; and Phillips is a separate purchaser from the United States of the remainder of said east half, containing forty-five acres and eighty-five hundredths of an acre, having as its north boundary line the south line of Thomas's quarter section. That neither Thomas nor defendant has yet taken any certificate or other evidence of title to said tract so purchased by them. That, about February 24th, 1840, Thomas quit-claimed to Phillips in fee, all his title and interest to the south half of said east half of fractional section nineteen, containing one hundred and two acres and ninety-two hundredths of an acre. And, since the making of said warranty deed of defendant to complainant, Phillips quit-claimed his interest in fee in the same tract to Thomas.

That, after complainant discovered defendant's want of title, he entered into possession with defendant's assent;

De Armand *v.* Phillips.

and consented temporarily to occupy and cultivate, and has so occupied and cultivated forty-five acres next adjoining, on the south, the south half of said east half of fractional section nineteen, the said forty-five acres being part of said quarter section purchased by Thomas, and part of that which Thomas quit-claimed to defendant. That complainant has expended large sums in improvements, with defendant's consent, and has always been ready to pay on receiving a marketable title.

Prays for specific performance by defendant of his agreement, and that he may make a good title; or else refund what has been paid for purchase and improvements.

The defendant's answer admits that complainant occupied the farm mentioned in the bill, and that, in February, 1839, he applied to defendant to purchase an undivided interest, amounting to forty-five acres, in the adjoining tract. States that this tract (of defendant and Thomas) was originally known as the east half of a fraction numbered nineteen, town eight south, of range nineteen west, containing but two hundred and five acres and eighty-five hundredths of an acre, and was surveyed as one legal subdivision equivalent to a quarter section, and was entered jointly by defendant and E. Thomas, at Kalamazoo, where they received certificate No. 23,737, dated September 29th, 1838. Admits he knew complainant's object in purchasing from him, and that, on the eleventh day of February, 1839, Ames drew up the articles of agreement set forth in the bill. That, after the agreement was made, defendant and Thomas were notified of an alteration in the survey, and that, unless defendant and Thomas lived on the distinct quarter, they could not *jointly* hold, but one would have the quarter, and the other the fraction. That, in fact, Thomas lived on the quarter, and defendant on the fraction, but defendant had advanced an equal amount

of purchase money for the whole, supposing they could jointly hold, and he was, therefore, equitably. entitled to half of the premises. That this information was communicated to complainant. Admits the quit-claim deeds between defendant and Thomas, dated February 26th, 1840, the nominal consideration being one hundred dollars, but the real one being the facts above stated. Thomas quit-claimed to defendant all his interest in the south half of the east half of fractional section nineteen, it being the half of said east half lying south of an east and west line drawn through it parallel to the Indiana state line, and being the south half of the land held by Thomas and defendant jointly by duplicate, &c. Defendant quit-claimed to Thomas the north half of said premises. That both these deeds were made with the advice and consent of complainant, who is a subscribing witness to one or both of the deeds, and who also advanced money to pay for effecting this agreement, and to pay counsel. Admits that defendant made the deed to complainant as set forth in the bill, with covenants, &c. Says this deed was made at the urgent request of complainant, and to enable him to effect partition. That the deed was not fully read or understood by defendant, but he was informed the same was consistent with his title, and took an agreement from complainant and Ames, to indemnify him against any damage that might ensue on giving such a deed. Insists that the duplicate is valid to sustain a quit-claim deed, and that the title enures to the complainant under the warranty deed. Admits that no patent or new certificate was taken out, but insists there was no necessity for any. Admits that, after the quit-claim deeds, complainant entered on forty-five acres, on the south half of the quarter section conveyed by Thomas to defendant, and that complainant had full knowledge of all the facts touching the

De Armand *v.* Phillips.

premises and the title in question, and says this entry was made and occupation had, under and by virtue of a parol agreement and partition by and between defendant and complainant. That complainant agreed to take his forty-five acres from the south half of said quarter section, and, in pursuance of this agreement, defendant set off to him, by admeasurement, his forty-five acres, which he has entered upon and still occupies under his deed and the parol partition.

Denies that defendant ever deceived complainant concerning his title, or that any lands except those mentioned in the duplicate were ever spoken of between them, and says that reference was particularly had to the land afterwards included in the separate quarter. Denies that there was any mistake in the agreement executed, or any fraud in relation to it, but says the premises were mentioned and located so as best to ascertain the portion which the complainant wished to obtain, with a view to partition. The agreement was fairly read to complainant, and fully expresses the intention of the parties. It was never understood that defendant should guaranty the forty-five acres to be set off next to complainant's farm, or that the payment was to depend upon such contingency. Denies that the bargain was different from the agreement executed.

Denies that defendant agreed to bear the cost of partition, or that he obtained a higher price on account of any such agreement, or that he agreed complainant should certainly have the forty-five acres next to his farm. Says that complainant understood the whole matter, and calculated the chances of his obtaining the desired location. Denies that complainant was not fully informed of all the facts, at the time of taking the deed. Says that defendant was inclined to defer giving the deed, and to rescind,

but complainant insisted on having the deed. Denies that the duplicate was or is invalid, or erroneously issued so as to render the same void or voidable, or that it has been invalidated, recalled, or avoided, by the United States, any further than the fraction. Submits that the certificate was good to Thomas, especially after the release by defendant, so that no new certificate was necessary. Denies that complainant has expended much money; denies encumbrances, and submits that defendant has complied with his agreement.

Complainant filed a general replication.

*V. L. Bradford*, for complainant.

I. The defendant has failed to perform the agreement made with complainant, and the Court will therefore grant such relief as is meet.

1. He has failed to give the complainant a legal title to any portion of the land. He had no title whatever, legal or equitable, in the quarter section, which belonged to Thomas, until the quit-claim from Thomas to him. He has never obtained a legal title, and it is questionable, from the facts of the case, under the pre-emption laws, whether he has even an equitable title.

2. The patent for the quarter section can issue to no one but Thomas.

3. He has not obtained for complainant the precise land specified.

II. Complainant has done no act amounting to a waiver of his rights, and nothing has happened which could prevent his right to relief.

1. No act of waiver took place in the transactions between defendant and Thomas, and complainant lost no right by being a witness and acquiescing in defendant's deed to Thomas, because that deed conveyed no title.

De Armand *v.* Phillips.

2. Even if that conveyance had been effectual, it would have created no waiver. Such waiver must be *express.*

3. There was no *valid consideration* for a waiver, and such consideration was necessary.

4. The complainant had a right, without relinquishing his claim to damages, to assent to any act by which Phillips would be enabled to perform any part of his agreement.

5. Complainant's possession and occupation of the forty-five acres, was no waiver. *First.* Because the parties still considered the agreement of February, 1839, binding, and the occupation was meant to be only temporary. *Secondly.* Because such parol partition is contrary to the statute of frauds. *Thirdly.* Because defendant can make no legal title to the lands.

6. The agreement of complainant and Ames, with defendant, *not being under seal,* did not release the covenants in defendant's deed. There was also no sufficient consideration.

III. As to what relief complainant is entitled to.

1. He is entitled to a specific performance of the whole contract. To enable the Court to decree a specific performance against a vendor, it is not necessary that he should have the legal estate; for, if he has an equitable title, a performance *in specie* will be decreed, and he must obtain the concurrence of the person having the legal estate. The vendor is considered a trustee for the purchaser.

2. A court of equity will compel a vendor to a specific performance for a part of the land, where he has incapacitated himself from conveying the whole.

3. For the residue he will be entitled to damages. Equity is sometimes done between the parties on the principle of compensation, for deficiency in quantity or quality, &c.

Or, a compensation in damages for the whole may be given, to be ascertained by reference to a Master. It is true, generally, that a purchaser may take what he can get, with *compensation* for what he cannot have.

*Green & Dana*, for defendant.

*C. Dana.*

I. There was no fraud or misrepresentation on the part of defendant. The bill is proved to be false in several particulars, and the maxim, *falsus in uno, falsus in omnibus*, applies.

II. There was no *mistake* in the *agreement* of the parties, and no *mistake* in the manner in which defendant and Thomas obtained pre-emption. The difficulty arose from an act of the United States government, viz: a new division of the land, on a new construction of the law. And a mistake in regard to the *law*, does not entitle a man to relief, either in law or equity.

III. All the relief to which the complainant might have had pretence, on learning the new action of the United States, was, by his subsequent voluntary acts, waived, abandoned, and discharged by him.

1. He procured a quit-claim deed from Thomas to defendant, at defendant's expense of $100, in addition to what he paid at the land-office.

2. He paid the defendant afterwards, voluntarily, $250, and has occupied the land in severalty, nearly three years.

This Court will relieve against a clear case of mistake, or fraud, but never against the voluntary acts of the party.

IV. There is no failure of consideration. The complainant has a warranty deed, and there has been no *eviction* by paramount title. There is no fraud shown, and therefore there is no ground for asking relief.

V. Defendant is entitled to a decree for the amount of his note for $250, given May 1, 1841, and interest and costs, as indemnity for the delay to which he has been subjected by this bill.

THE CHANCELLOR. In September, 1838, the defendant, and one Ezekiel Thomas, purchased at the land-office at Kalamazoo, the east half of fractional section nineteen, town eight south, of range eighteen west, containing two hundred and five acres and eighty-five hundredths of an acre, under an act to grant pre-emption rights to settlers on the public lands, passed by Congress that year, and took a certificate from the receiver of the land-office, of the payment of the money. The certificate described the land as the north half of the northeast quarter, and lots numbered one and two, of section nineteen, town eight south, of range eighteen, west. Complainant owned a farm of eighty acres, adjoining the tract on the north, and, being desirous of enlarging his farm, on February 11th, 1839, entered into a written contract with defendant for the purchase of forty-five acres of his undivided half, for which he was to pay $800;—$300 on the first of May following, when a deed was to be given, $250 on May 1st, 1840, and a like sum May 1st, 1841. By the contract, defendant agreed that complainant should have his forty-five acres next to his farm, "provided the arbitrators should so award it." On the first of March, instead of the first of May, at the urgent solicitation of complainant, defendant and wife executed a warranty deed to him for his forty-five acres. Defendant, at first, refused to execute the deed, on the ground a patent had not then been obtained for the land; and, to induce him to execute it, complainant and one Joseph G. Ames agreed in writing to stand between him and all harm, and "to pay all dama-

ges he might sustain by reason of any illegal right to convey by deed his interest, or any part thereof, by a warranty deed." The bill charges there was a mistake made in drawing the contract, but this is disproved, both by the answer, and the testimony of Ames, who drew up the contract. Up to the execution of the deed on the first of March, and, I may say, throughout, for aught I can discover to the contrary, the defendant dealt fairly and honestly with complainant. There was no fraud, no misrepresentation or concealment of his interest in the land; and complainant was aware of all the facts and circumstances relating to the title, as fully as defendant himself. He knew defendant and Thomas resided on different parts of the land; that they claimed it jointly under the preemption act of 1838, and that they had proved their claim, paid their money, and rightfully obtained a certificate from the receiver at the proper land-office. He also knew he must run the risk, when the land was divided, of having his forty-five acres set off adjoining his farm. Defendant had given his consent to such a partition, but he had gone no further; he had not agreed Thomas should assent to it. He was bound to give a deed in May, at which time, in all probability, he expected that he and Thomas would be in possession of the patent; for, when he was applied to for a deed, in February, he refused to give it until he was indemnified, as above stated. Soon after the deed was executed and delivered, probably in April, as appears from the testimony of Everett, defendant and Thomas received a notice from the land-office that the surveyor general had altered the survey of the section, by dividing the east half of it into a distinct quarter, with a fraction on the state line between Michigan and Indiana, and that, if they both resided on the quarter, they could hold it jointly; but, if one resided on the quarter, and the

other on the fraction, each could take the one on which he resided. Thomas, in fact, resided on the quarter, and defendant on the fraction. This alteration of the original survey is what has probably given rise to this suit.

Thomas and defendant had in good faith taken the land jointly, each advancing one half of the purchase money; and, after the alteration was made, neither could take the part to which he was entitled under it, without first annulling the agreement by which they had taken the land together. Nor, even then, could defendant take the fraction, until the contract and deed between him and complainant were also annulled; the pre-emption law requiring the claimant to take an oath that he had not directly, or indirectly, made any agreement or contract, in any way or manner, with any person or persons whatever, whereby the title which he might acquire should enure to the use or benefit of any one except himself, or to convey or transfer the land, or the title which he might acquire to the same to any other person or persons, at any subsequent time. *Laws U. S., Vol.* 9., *p.* 801. To obviate this difficulty, as it would seem, for the parties had dealt with each other in good faith, and had intended no violation of the pre-emption act, Thomas and defendant held on to the receiver's certificate of September, 1838, and afterwards, on February 26th, 1840, executed mutual quitclaim deeds to each other, Thomas quit-claiming the south half of the land to defendant, and defendant the north half to Thomas. This was done with the approbation and consent of complainant, who was a witness to the deed from Thomas to defendant, and advanced the latter money to enable him to bring about the arrangement. Chipman, in his testimony, says he acted as defendant's counsel, in procuring the quit-claim deed from Thomas; that Thomas at first refused to execute one, but afterwards

consented, on being paid $75; that complainant came with defendant to get the deed drawn ; and that he advanced the $75 to pay Thomas, and accepted an order for $25 drawn on him by defendant, in favor of witness for his services, which he afterwards paid. He also understood the object of the deed was to enable defendant to make a conveyance of a part of the land to complainant, and that the money advanced was a part of the purchase money, in the bargain for the land between complainant and defendant.

Long before this, and after he had become acquainted with all the facts in regard to the receiver's certificate, and defendant's title under it, complainant took possession of forty-five acres of the land, it being the north part of the south half subsequently quit-claimed by Thomas to defendant. The bill and answer disagree as to the character of this possession. Complainant says he took possession with the assent of defendant, and with a view to occupy and cultivate it temporarily only, whereas the defendant says it was under a parol agreement between them for a partition of the land. No part of the $800 had been paid when defendant was notified of the alteration of the original survey, and the effect it would have on the certificate. This was the last of March, or forepart of April, preceding the first of May, when $300 was to be paid, and I am inclined to believe, from the evidence, that complainant was in possession of all the facts, before the $300 was paid. However that may be, it appears he was in possession of them long before the $250, falling due in May, 1840, was paid by him.

If complainant was entitled to any relief in equity, it was to have the contract between him and defendant rescinded, and defendant's deed to him cancelled, on learning the action of the government on the land-office certifi-

De Armand *v.* Phillips.

cate. This he would, probably, have been entitled to, on the ground of mutual mistake, as both parties had a right to suppose, when the contract was entered into, and the deed given, that a patent would be issued in accordance with the receiver's certificate. But he has clearly waived this right by his subsequent conduct, and tacitly, at least, agreed to take his forty-five acres in the south half of the land, to which the defendant had an equitable title, with the legal title in the government; and to rely on the defendant's warranty of that title, and the strong probability there was that government would not molest him in the enjoyment of the property, as a protection against the legal title. When a party is entitled to rescind a contract, he should act promptly, and not sleep on his rights, or take time to speculate on the course of events. If he goes on, with a full knowledge of his rights, recognising the contract as still in force, and by his acts and conduct tacitly gives his assent to its execution, in a manner different from the original understanding of the parties, he is not entitled, in equity, to have either the contract itself rescinded, or any relief inconsistent with what may fairly, and reasonably, be presumed from his own acts to have been assented to by him.

Bill dismissed, with costs to defendant.